Below is an opinion of the court.

_David W. Hercher_
_____
DAVID W. HERCHER
U.S. Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| In re | Chapter 7 |
| **Molly E. Achugbue**, | Case No. 10-31819-dwh7 |
| Debtor. | |
| **Amy Mitchell, Chapter 7 trustee for the estate of Molly E. Achugbue**, | Adversary Proceeding No. 19-03073-dwh |
| Plaintiff, | MEMORANDUM DECISION ON EQUITABLE-REMAND MOTIONS |
| v. | NOT FOR PUBLICATION |
| **Jason Hohnbaum; Patty Hohnbaum, Sara M. Snyder, fkn Sara M. Cooley; ReconTrust Company, N.A.;** and **Pacific Residential**, | |
| Defendants | |
| Entire caption appears beginning on page 39. | |

## I.     Introduction

This memorandum explains my decision to grant equitable-remand motions pending in

three adversary proceedings. The caption of the first action appears above, and all three captions

appear beginning on page 39. I have prepared this single memorandum because the motions raise similar legal issues, and I have held joint hearings in the actions. I refer to each action by the last name of the first-named defendant. Adversary Proceeding No. 19-3073 is *Hohnbaum*, Adversary Proceeding No. 19-3076 is *Peyton,* and Adversary Proceeding No. 19-3091 is *Promwongsa*.

For the reasons that follow—primarily the predominance in these actions of complex and important state-law issues—I will remand these actions to the Multnomah County, Oregon, Circuit Court.

## II.    Background

The two debtors who had owned the *Peyton* property, Robert Manning and Cynthia Manning, are in separate chapter 7 cases. The two trustees filed a single state-court action on behalf of both estates. Defendant ReconTrust Company, N.A., removed it twice, once for each of the two main cases. The action related to Robert's case is No. 19-3076, and the action related to Cynthia's case is No. 19-6041. Because the two actions are literally identical, I dismissed No. 19-6041—the second to be filed—with the parties' consent and without prejudice on November 8, 2019.[1] Before No. 19-6041 was dismissed, parties filed several documents in No. 19-6041 but not also in No. 19-3076: docket items 49 (ReconTrust's notice of supplemental authority), 50 (plaintiffs' response to ReconTrust's motion for judgment on the pleadings), 52 (memorandum re notice of supplemental authority), and 54 (plaintiff's response to the motion to dismiss by defendants Alvin and April Peyton). Because the two documents to which the trustees were responding in No. 19-6041 (docket items 32 and 26) are identical to two others in No. 19-3076 (docket items 29 and 25), and the trustees did not otherwise respond in No. 19-3076 to docket items 29 and 25, I will treat docket items 32 and 26 in No. 19-6041 as responsive to

---

[1] No. 19-6041 (Peyton; Cynthia Manning main case) DI 57.

Case 19-03073-dwh    Doc 80    Filed 04/10/20

docket items 29 and 25 in No. 19-3076. I will also treat the two documents filed by ReconTrust (docket items 49 and 52) as having been filed in No 19-3076.

These three actions raise substantially identical issues of law. The plaintiffs are the trustees of four chapter 7 estates (*Peyton* involves one property jointly owned by two debtors in separate cases). Each of the cases was closed and then reopened for the filing of the complaints. The trustees filed these actions in state court, and defendants removed them here. These actions are based on state law and arise out of allegedly invalid foreclosures of the debtors' homes in 2009. The trustees seek damages for trespass and statutory damages for filing invalid claims of encumbrance.[2] They also seek declaratory relief that the bankruptcy estates are the true owners of the properties.[3] Defendants have filed motions to dismiss or for judgment on the pleadings, which are under advisement.

The trustees filed equitable-remand motions on November 6, 2019, in *Hohnbaum*[4] and *Promwongsa*.[5] Defendants filed joint oppositions on December 4, 2019.[6] Although no remand motion has been filed in *Peyton*, the remand issues are nearly identical in each of the three actions, so at the December 6, 2019, hearing,[7] I raised the question whether to equitably remand *Peyton* as well on my own motion. At the further hearing on January 3, 2020, the trustees' lawyer said that the absence of a remand motion in *Peyton* was an oversight. None of the *Peyton*

---

[2] *Hohnbaum* DI 1-1, Ex. 1 (amended complaint) at 7-8; *Peyton* DI 1, Ex. 1 (complaint) at 8-10; *Promwongsa* DI 1, Ex. A (complaint) at 6-7.
[3] *Hohnbaum* DI 1-1, Ex. 1 (amended complaint) at 6; *Peyton* DI 1, Ex. 1 (complaint) at 6-8; *Promwongsa* DI 1, Ex. A (complaint) at 5-6.
[4] *Hohnbuam* DI 61 (plaintiff's motion for remand).
[5] *Promwongsa* DI 27 (plaintiff's motion for remand).
[6] *Hohnbaum* DI 75 (defendants' joint opposition to trustee's motion for remand); *Promwongsa* DI 52 (defendants' joint opposition to trustee's motion for remand).
[7] *Peyton* DI 50 (record of proceeding).

defendants objected to my consideration whether to remand *Peyton*, and they had adequate opportunity to oppose remand.

Because I agree that these actions should be equitably remanded, I will take no action on defendants' motions.

## III.    Legal standards

These actions are within this court's removal jurisdiction under 28 U.S.C. § 1452(a), which permits removal of "any claim or cause of action in a civil action" (with irrelevant exceptions) if it is within the court's jurisdiction under 28 U.S.C. § 1334. Section 1334 in turn gives the court nonexclusive jurisdiction of "civil proceeding arising under title 11, or arising in or related to cases under title 11." As permitted by 28 U.S.C. § 157(a), the district court has referred bankruptcy cases to the district's bankruptcy judges.[8]

Section 1452(b) permits remand "on any equitable ground," meaning any ground that is "reasonable, fair, and appropriate."[9] To decide whether to equitably remand, courts in the Ninth Circuit often consider the 14 factors listed in *In re Cedar Funding, Inc.*,[10] a 2009 Ninth Circuit Bankruptcy Appellate Panel case. The first 12 of those factors are traceable to the 1990 Ninth Circuit case, *In re Tucson Estates, Inc.*, applying them to permissive abstention.[11]

---

[8] LR 2100-1(a).
[9] Things Remembered v. Petrarca, 516 U.S. 124 (1995).
[10] 419 B.R. 807, 820 (9th Cir. B.A.P. 2009). *See also* Slinde & Nelson, LLC v. Luneke, No 3:16-cv-1914-HZ, 2017 WL 721242, *2 (D. Or. Feb. 22, 2017).
[11] 912 F.2d 1162, 1167 (9th Cir. 1990); *In re* Enron Corp., 296 B.R. 505, 508 (C.D. Cal. 2003) (addressing remand; cited by *Cedar Funding)*; Davis v. Life Investors Ins. Co. of America, 282 B.R. 186, 194 n.7 (S.D. Miss. 2002) (addressing abstention and remand; cited by *Enron*); Searcy v. Knostman, 155 B.R. 699, 710 (S.D. Miss. 1993) (addressing abstention and remand; cited by *Davis*).

# IV. Analysis

## A. Cedar Funding *factors*

### 1. The effect or lack thereof on the efficient administration of the estate if the court recommends remand

The trustees argue that, because these main cases were reopened only to process these actions, no other estate administration is occurring, so these actions cannot affect efficient estate administration.[12]

Defendants argue that retention, rather than remand, would serve the efficient administration of the estates, for two reasons: it's always more efficient and economical to litigate adversary proceedings in the same venue as the main bankruptcy case; and progress has been made toward resolving these actions during their "long history in federal court."[13]

I interpret this factor to ask whether estate administration would be relatively more or less efficient if these actions are remanded. Whether these actions are resolved here or in state court, the related main bankruptcy cases will remain open pending resolution of these actions, after which the trustees will administer the estates in accordance with bankruptcy law and procedure. The efficiency of that administration will not be affected by whether the resolution of these actions occurs here or in state court.

During the resolution of these actions, the bankruptcy judges presiding over the main cases will periodically monitor the main cases to determine whether the related actions have been concluded, so that the main cases can then also be concluded. I preside over the main cases related to *Hohnbaum* and *Promwongsa* and one of the two main cases (Robert Manning's) related to *Peyton*. Bankruptcy Judge Thomas Renn presides over the other main case related to

---

[12] *Hohnbaum* DI 61 (motion to remand) at 2; *Promwongsa* DI 27 (motion to remand).
[13] *Hohnbaum* DI 75 (defendants' joint opposition to motion to dismiss) at 4; *Promwongsa* DI4 (defendants' joint opposition to trustee's motion for remand).

*Peyton* (Cynthia Manning's). Monitoring the main cases would be slightly easier for me if these actions were to remain here, because I also preside over these actions, at least until any transfer to district court for trial or consideration of proposed final dispositions. But the difference is minor, because even if I do not continue to preside over these actions, the main-case monitoring takes an immaterial amount of judicial time. Because Judge Renn does not preside over any of these actions, his monitoring of the Cynthia Manning case would not be any easier for him if *Peyton* remains here.

Cases cited by defendants do not persuade me that remand of these actions would reduce the efficiency of administration of the main bankruptcy cases. The dispute in *In re Mercer's Enterprises, Inc.*, had its roots in the debtor's prior bankruptcy case in the same bankruptcy court, in which the plaintiff bought land from the debtor and obtained an court order giving the plaintiff clear title.[14] By contrast, the trustees' claims in these actions are not based on any events in the main bankruptcy cases other than the filing of the petitions and the appointments of the trustees.

In *In re AmericanWest Bancorporation*,[15] the defendant in the removed action filed an administrative claim seeking indemnity from the debtor for any liability imposed on the defendant in the action. The indemnity claim exceeded the debtor's total assets. The factual and legal questions presented by the administrative claim overlapped with those in the action. Chapter 11 plan distributions could not begin until the both the action and the administrative claim had been fully determined, preventing distributions to other creditors. Here, by contrast, there are no estate assets other than the trustee's claims in these actions, so the pendency of these

---

[14] 387 B.R. 681, 688-89 (Bankr. E.D.N.C. 2008).
[15] No. 11-80323-PCW, 2011 WL 6013779, at *2 (Bankr. E.D. Wash. Dec. 2, 2011), *adopted*, No. 2012 WL 394379 (E.D. Wash. Feb. 3, 2017).

actions is not preventing disbursement of estate assets that could be made had these actions not been brought.

*In re Bavelis*[16] did not involve equitable remand under section 1452(b). In the context of an adversary proceeding commenced by the chapter 11 debtor (i.e. not removed), the defendants requested remand to state court of a separate action (the "Quick Capital Lawsuit") that had been removed before bankruptcy under the general federal-removal statute, 28 U.S.C. § 1441, to the district court in a different district than the venue of the bankruptcy court, and the venue of that action had not been transferred to the district of the bankruptcy case. Here, defendants' quotes from *Bavelis* address grounds for changing venue of the debtor's main case, not for remand of a removed action—much less the action in which that decision was made.

Defendants cite and quote from *In re Neel*,[17] an Oregon bankruptcy case with facts similar to those in these actions, that "resolution of the claims [in these actions] will have a dramatic impact on the Estate." As in *Neel*, resolution of these actions in favor of the trustees could have complex results, including the estates owning property encumbered by reinstated trust deeds with substantial defaults and the assertion against the estates of claims of subsequent buyers and their lenders. Only this court can adjudicate interests in estate property and claims against the estate. But I disagree with the conclusion that this court's expertise in applying bankruptcy law to the results of the litigation means that this court is better—or even as well—equipped than the state court to handle the litigation itself. Indeed, it's precisely because the state court would have no responsibility for application of bankruptcy law to the results of the litigation that it could best focus on correctly applying state law.

---

[16] 453 B.R. 832, 870 (Bankr. S.D. Ohio 2011).
[17] 554 B.R. 241 (Bankr. D. Or. 2016).

In a footnote, defendants observe that the estates related to these actions "cannot be fully administered" until these actions are resolved, claiming to contrast that situation to *In re Peak Web LLC*, where the bankruptcy judge found that "reorganization is not dependent on resolution of the claims"[18] as one among several facts leading to his conclusion that "remanding to state court will not have an adverse effect on the efficient administration of the estate." *Peak Web* was a chapter 11 case in which the bankruptcy court granted the debtor's motion to remand a state-court action before the debtor's reorganization plan had been confirmed. The reorganization to which *Peak Web* refers is confirmation of a chapter 11 plan, not full administration of the estate. Although the *Peak Web* litigation could proceed in parallel with the plan process, full administration of the estate—a significant asset of which would be any litigation proceeds—could occur only after resolution of the litigation. In that respect, chapter 11 cases such as *Peak Web* are identical to chapter 7 cases, such as those related to these actions.

Remand would not materially affect the efficiency of estate administration. This factor is thus neutral.

### 2. Extent to which state law issues predominate over bankruptcy issues

I interpret this factor to require consideration of the relative quantity of legal issues turning on state law, rather than bankruptcy law.

The trustees argue that all of their claims are based on state, not federal, law, so state-law issues predominate.[19] Defendants argue that these actions raise important issues of federal law

---

[18] 559 B.R. 738, 741-42 (Bankr. D. Or. 2016), *aff'd sub nom.* Machine Zone, Inc. v. Peak Web, LLC, No. 3:16-cv-01832-SI, 2017 WL 517796 (D. Or. Feb. 7, 2017); *Hohnbaum* DI 75 (defendants' joint opposition to trustee's motion for remand) at 5 n. 1.

[19] *Hohnbaum* DI 61 (plaintiff's motion for remand) at 2; *Promwongsa* DI 27 (plaintiff's motion for remand) at 2.

because they are "unavoidably avoidance actions" under the Bankruptcy Code[20] (title 11 of the U.S. Code), quoting from *Arnot v. ServiceLink Title Insurance Company of Oregon*, a decision of Judge Mosman of the Oregon district court.[21] Defendants rely heavily on *ServiceLink* and *Neel*,[22] the bankruptcy-court predecessor to *ServiceLink*.[23]

Back in district court, defendant ServiceLink moved for summary judgment.[24] At oral argument, Judge Mosman granted the motion on grounds including the time bar of the two-years limitation period of section 546(a).[25] The judge entered a written opinion and order on December 9, 2019.[26]

That decision is on appeal to the Ninth Circuit.[27]

### (a)    State-law issues

Each complaint includes three claims for relief: quiet title, trespass, and invalid claim of encumbrance.[28] The defendants' positions described below appear in motions to dismiss or for judgment on the pleadings.

---

[20] *Hohnbaum* DI 75 (defendants' joint opposition to trustee's motion for remand) at 5; *Promwongsa* DI4 (defendants' joint opposition to trustee's motion for remand).
[21] No. 3:17-cv-00591-MO, 2019 WL 94789478 (D. Or. Dec. 9, 2019).
[22] 554 B.R. 241 (2016).
[23] No. 16-3045-rld DI 5 (report and recommendation re: withdrawal of the reference) (Bankr. D. Or. Dec. 27, 2016); No. 3:17-cv-00591-MO DI 7 (order granting motion to withdraw referral) (D. Or. Feb. 13, 2017).
[24] No. 3:17-cv-00591-MO DI 23 (D. Or. Aug. 11, 2019).
[25] No. 3:17-cv-00591-MO DI 48 (transcript of hearing on October 17, 2019) (D. Or. Oct. 24, 2019).
[26] No. 3:17-cv-00591-MO DI 49 (D. Or. Dec. 9, 2019).
[27] No. 3:17-cv-00591-MO DI 52 (D. Or. Jan. 8, 2020); No. 20-35122 (9th Cir.).
[28] *Hohnbaum* DI 1-1, Ex. 1 (amended complaint) at 6-8; *Peyton* DI 1, Ex. 1, Ex. 1 (complaint) at 6-10; *Promwongsa* DI 1, Ex. A (complaint) at 5-7.

### (1)    Quiet-title

The quiet-title claims allege that Mortgage Electronic Registration Systems, Inc. (MERS), was never holder of the note secured by or the beneficiary under the trust deeds and thus could not appoint the successor trustee; the true beneficiary did not appoint the successor trustees who conducted the foreclosure sales; the appointed successors lacked authority to foreclose; the foreclosure documents were false statements; the foreclosure sales and trustee's deed were void; all deeds to grantees, including new secured creditors, who took directly or indirectly from the foreclosing trustees conveyed no interest in the property; the debtors has been entitled to exclusive possession of the property, subject to the trustees' rights since the petition date; the trustees are the sole owners of the properties; and defendants have no right, title, or claim to the properties.[29]

### (A)    Are the quiet-title claims barred by the ten-year limitation period of ORS 12.040?

In *Hohnbaum* and *Peyton*, ReconTrust, joined by others, asserts that the quiet-title claim is time-barred under two state statutes, the first of which is the ten-year limitation period of ORS 12.040 because all components of the foreclosure except the recording of the trustee's deeds occurred more than 10 years before the complaints were filed.[30]

---

[29] *Hohnbaum* DI 1-1, Ex. 1 (amended complaint) at 3-6; *Peyton* DI 1, Ex. 1 (complaint) at 6-8; *Promwongsa* DI 1, Ex. A (complaint) at 3-6.

[30] *Hohnbaum* DI 47 (ReconTrust's motion for judgment on the pleadings, joined by Hohnbaums in DI 52 and Pacific Residential in DI 55) at 5; *Peyton* DI 29 (ReconTrust's motion for judgment on the pleadings, joined by Eagle Mortgage in DI 38) at 5-6.

The trustees respond that they seek to quiet title to the property only as to the trustee's deed itself, which they claim to be invalid, and these actions were brought within 10 years after the sales.[31]

### (B) Are the quiet-title claims barred by the five-year limitation period of ORS 86.767(6)?

The second limitation period on which ReconTrust relies is the five-year period of ORS 86.767(6) because these actions were filed more than five years after the foreclosure sales.[32]

The trustees respond that ORS 86.767(6) applies only to a foreclosure sale that has been conducted under the statute, and the foreclosure sales here were not made under the statute because the successor trustees were not validly appointed by MERS, so no sale has occurred.[33]

### (C) Do the quiet-title claims fail to plead strength of title and willingness and ability to cure?

Third, ReconTrust asserts that the quiet-title claims fail to plead two elements: the strength of the trustees' title and their willingness and ability to cure.[34]

The trustees respond that (1) they have pleaded the strength of their title by alleging that the debtors bought the properties and filed for bankruptcy, and the trustees own the properties; and (2) because the foreclosure sales were void, the Oregon Trust Deed Act's requirement that a plaintiff plead willingness and ability to cure claimed trust-deed defaults does not apply to these

---

[31] *Hohnbaum* DI 62 (trustee's response to ReconTrust's motion for judgment on the pleadings) at 3; No. 19-6041 (Peyton; Cynthia Manning main case) DI 50 (treated as trustee's response to *Peyton* DI 29 (ReconTrust's Peyton motion for judgment on the pleadings) at 3).

[32]

[33] *Hohnbaum* DI 71 (transcript of hearing in all three actions on November 7, 2019) at 27:4-12, 65:9-19.

[34] *Hohnbaum* DI 47 (ReconTrust's Hohnbaum motion for judgment on the pleadings) at 6-8; *Peyton* DI 29 (ReconTrust's motion for judgment on the pleadings) at 7-9.

actions.[35] The trustees assert that MERS's appointment of successor trustees was invalid, the invalid appointments had no effect, and the sales were invalid.[36]

> **(D)  Are the quiet-title claims barred by ORS 86.803, making trustee's-deed recitals conclusive?**

In the Peytons' motion to dismiss, they first assert that ORS 86.803 bars *Peyton*, regardless of any defects in the trustee's deed, because the recitals in the trustee's deed became conclusive as to the validity of the foreclosure when the property was bought by the Peytons as bona fide purchasers of the property[37] and that the conclusive effect prevented the claims from becoming bankruptcy estate property.[38] In *Promwongsa*, defendants Dung Xuan Ngo and Dianna Ngoc Diep Ngo make the same argument.[39]

In response, the trustees argue that ORS 86.803 does not apply to an invalid foreclosure sale.[40]

> **(E)  Have the trustees failed to join indispensable parties?**

The Peytons also assert that the trustees failed to join as indispensable parties the original lender and beneficiary, the buyer at the foreclosure sale, and others later acquiring interests in the property, which the Peytons identify as MERS as the nominal beneficiary for Countrywide

---

[35] *Hohnbaum* DI 62 (trustee's response to ReconTrust's motion for judgment on the pleadings) at 5-6; No. 19-6041 (Peyton; Cynthia Manning main case) DI 50 (treated as plaintiffs' response to *Peyton* DI 29 (ReconTrust's Peyton motion for judgment on the pleadings) at 6-7.

[36] *Hohnbaum* DI 62 (trustee's response to ReconTrust's motion for judgment on the pleadings) at 6-10; No. 19-6041 (Peyton; Cynthia Manning main case) DI 50 (treated as plaintiffs' response to *Peyton* DI 29 (ReconTrust's motion for judgment on the pleadings) at 7-11.

[37] *Peyton* DI 25 (*Peyton* DI 25 (Peytons' motion to dismiss) at 5-9.

[38] *Peyton* DI 25 (Peytons' motion to dismiss) at 10.

[39] *Promwongsa* DI 25 (Ngos' motion to dismiss) at 2-3.

[40] No. 19-6041 (Peyton; Cynthia Manning main case) DI 54 (treated as plaintiffs' response to *Peyton* DI 25 (Peytons' motion to dismiss) at 2-10; *Promwongsa* DI 45 (trustee Mitchell's response to Ngos' motion to dismiss) at 3-6.

Home Loans, Inc., Fannie Mae, and all current lienholders on the property (which the Peytons don't name).[41] In *Promwongsa*, the Ngos make the same argument.[42]

In response, the trustees assert that, if they prevail, it will be up to lienholders to decide whether to commence another lawful foreclosure, and defendants are free to join other parties who may be liable to defendants, but doing so is not the trustee's procedural burden.[43]

> ## (F) Do the quiet-title claims fail to satisfy ORS 105.605 because they do not allege that the trustees are in possession of the properties?

The Ngos argue that the quiet-title claim does not satisfy ORS 105.605 because the trustee does not allege that she is in actual possession of the property.[44]

In response, the trustee says that the Ngos may be correct, but the trustee has nonetheless properly asserted a legal action for ejectment in lieu of quiet title.[45]

## (2) Trespass

The trespass claims allege that the foreclosing trust-deed trustees provided the immediate and subsequent buyers the means to enter the property; the buyers intentionally entered upon and property and remain there to the exclusion of the debtor and trustee and without the consent of debtor or the trustee, interfering with debtor and trustee's exclusive right of possession; debtor and the estate are entitled to damages for the reasonable rental value of the property from the time of the foreclosure sale until debtor and the trustee's right to exclusive possession is restored; the foreclosing trustee's wrongfully purporting to conduct the foreclosure sale and its issuance of

---

[41] *Peyton* DI 25 (Peytons' motion to dismiss) at 10-11.

[42] *Promwongsa* DI 25 (Ngos' motion to dismiss) at 3.

[43] No. 19-6041 (Peyton; Cynthia Manning main case) DI 54 (treated as plaintiffs' response to *Peyton* DI 25 (Peytons' motion to dismiss) at 11-12; *Promwongsa* DI 45 (trustee Mitchell's response to Ngos' motion to dismiss) at 6-7.

[44] *Promwongsa* DI 25 (Ngos' motion to dismiss) at 4.

[45] *Promwongsa* DI 45 (trustee Mitchell's response to Ngos' motion to dismiss) at 8.

a void trustee's deed were substantial factors in the initial and subsequent buyers' trespass, for which the foreclosing trustee is liable to the trustee as a contributing tortfeasor; and subsequent buyers' issuance of deeds to the next buyer were substantial factors in the next buyer's trespass, subjecting each subsequent grantor to liability to the trustee for harm caused as a contributing tortfeasor.[46]

        **(A)**      **Are the trespass claims barred by the six-year limitation period of ORS 12.080(2)?**

ReconTrust asserts that the trespass claim is barred under state law by the six-year limitation period of ORS 12.080(2).[47]

The trustees respond that liability for trespasses occurring within the six years before these actions were commenced—as to which these actions are timely under ORS 12.080(2)—derived from the foreclosure sales and subsequent sales, even those preceding the six-year period.[48]

        **(B)**      **Do the trespass claims fail to allege that defendants acted with scienter?**

ReconTrust asserts that the trespass claim fails to allege that the acts setting the invasion in motion were done with scienter—knowledge that trespass would result.[49]

---

[46] *Hohnbaum* DI 1-1, Ex. 1 (amended complaint), Ex. 1 at 7-8; *Peyton* DI 1, Ex. 1 (complaint) at 8-9; *Promwongsa* DI 1, Ex. A (complaint) at 7-8.

[47] *Hohnbaum* DI 47 (ReconTrust's motion for judgment on the pleadings) at 5-6; *Peyton* DI 29 (ReconTrust's motion for judgment on the pleadings) at 6.

[48] *Hohnbaum* DI 62 (trustee's response to ReconTrust's motion for judgment on the pleadings) at 3-5; No. 19-6041 (Peyton; Cynthia Manning main case) DI 50 (treated as plaintiffs' response to *Peyton* DI 29 (ReconTrust's motion for judgment on the pleadings)) at 4-5.

[49] *Hohnbaum* DI 47 (ReconTrust's motion for judgment on the pleadings) at 8-9; *Peyton* DI 29 (ReconTrust's motion for judgment on the pleadings) at 9.

In response, the trustees assert that the foreclosing trustee knew or should have known that the foreclosure sales were void, so the foreclosing trustee and all future grantees dealt with the properties with constructive knowledge of the recorded documents making the sales void.[50]

### (C) Does ORS 86.722(2) protect bona-fide purchasers from the trustees' claims, even if the foreclosures were void?

The Ngos argue that, under ORS 86.722(2), even if the foreclosure was void, it cannot be undone as to subsequent purchasers, including them.[51] Under ORS 86.722(2), reinstatement of a trust deed based on correction of an error under that statute does not affect right of a bona fide purchaser for value who acquired an interest after the trustee's deed was recorded and before the error was corrected.

In response, the trustee asserts that bona-fide purchaser status is a fact question that cannot be resolved on the Ngos' motion to dismiss, and the Ngos will not be able to establish bona-fide purchaser status at least because the facts on which the trustee relies are of record and thus the Ngos are charged with constructive knowledge of those facts.[52]

### (3) Invalid claim of encumbrance

The invalid-claim-of-encumbrance claim alleges that each foreclosure document, including the trustee's deed, constitutes an invalid claim of encumbrance subjecting the foreclosing trustee to liability for at least $5,000 plus the trustee's actual damages, including

---

[50] *Hohnbaum* DI 62 (trustee's response to ReconTrust's motion for judgment on the pleadings) at 10-11; No. 19-6041 (Peyton; Cynthia Manning main case) DI 50 (treated as ReconTrust's response to *Peyton* DI 29 at 11-12.
[51] *Promwongsa* DI 25 (Ngos' motion to dismiss) at 4.
[52] *Promwongsa* DI 45 (trustee Mitchell's response to Ngos' motion to dismiss) at 8-11.

damages for trespass and value of the property with costs and reasonable attorney fees under ORS 205.470.[53]

> **(A)  Are the invalid-claim-of-encumbrance claims barred by the six-year limitation period of ORS 12.080?**

ReconTrust asserts first that the invalid-claim-of-encumbrance claim is also barred by the six-year limitation period of ORS 12.080.[54]

The trustees respond that the limitation period for a statutory $5,000 penalty under the invalid-claim-of-encumbrance claim is ten years under ORS 12.080 because the ORS 205.450-.470 does not include its own limitation period, and ORS 12.080(2) does not apply to a penalty liability.[55]

> **(B)  Do the documents constitute encumbrances under ORS 205.470?**

ReconTrust asserts,[56] as do the Ngos,[57] that that the claim is defective because none of the documents at issue is an encumbrance under ORS 205.470.

The trustees respond that foreclosure papers recorded without authority constitute a claim that the signing parties are authorized to record them, and a trustee's deed is an archetypal claim against property.[58]

---

[53] *Hohnbaum* DI 1-1, Ex. 1 (amended complaint) at 8; *Peyton* DI 1, Ex. 1 (complaint) at 9-10; *Promwongsa* DI 1, Ex. A (complaint) at 8.
[54] *Hohnbaum* DI 47 (ReconTrust's motion for judgment on the pleadings) at 6; *Peyton* DI 29 (ReconTrust's motion for judgment on the pleadings) at 6.
[55] *Hohnbaum* DI 62 (trustee's response to ReconTrust's motion for judgment on the pleadings) at 5; No. 19-6041 (Peyton; Cynthia Manning main case) DI 50 (treated as ReconTrust's response to *Peyton* DI 29 at 13-14.
[56] *Hohnbaum* DI 47 (ReconTrust's motion for judgment on the pleadings) at 9; *Peyton* DI 25 (Peytons' motion to dismiss) at 29.
[57] *Promwongsa* DI 25 (Ngos' motion to dismiss) at 5.
[58] *Hohnbaum* DI 62 (trustee's response to ReconTrust's motion for judgment on the pleadings) at 11-12; *Promwongsa* DI 45 (trustee Mitchell's response to Ngos' motion to dismiss) at 12.

**(C)  Do the invalid-claim-of-encumbrance claims plead defendants' scienter?**

ReconTrust asserts that the trustees have not pleaded scienter as required by ORS 205.470 and could not do so because, in 2009, most Oregon courts had held that MERS could be a trust-deed beneficiary.[59]

The trustees respond that ORS 205.470 requires only that the person claiming an invalid encumbrance have acted knowingly, by recording the documents intentionally and not by accident, and need not have known that the documents were invalid.[60]

**(D)  Are national banks exempt from ORS 205.470?**

ReconTrust asserts that, as a national bank, it is exempt from ORS 205.470.[61] The trustees assert that the only national-bank exemption in ORS 205.450-.470 is in ORS 205.460(7), which establishes an expedited procedure for a judicial determination whether a document is an invalid claim of encumbrance, and there is no general exemption from that range of statutes for national banks, nor is there a specific exemption for banks from liability for penalty and damages under ORS 205.470.[62]

**(4)  Affirmative defenses**

Not all defendants have answered (some have moved to dismiss), but the answers that have been filed include many affirmative defenses that do not mention bankruptcy. In

---

[59] *Hohnbaum* DI 47 (ReconTrust's motion for judgment on the pleadings) at 9-10; *Peyton* DI 29 (ReconTrust's motion for judgment on the pleadings) at 10-11.

[60] *Hohnbaum* DI 62 (trustee's response to ReconTrust's motion for judgment on the pleadings) at 12.

[61] *Hohnbaum* DI 47 (ReconTrust's motion for judgment on the pleadings) at 10; *Peyton* DI 29 (ReconTrust's motion for judgment on the pleadings) at 10-11.

[62] *Hohnbaum* DI 62 (trustee's response to ReconTrust's motion for judgment on the pleadings) at 12-13; No. 19-6041 (Peyton; Cynthia Manning main case) DI 50 (treated as ReconTrust's response to *Peyton* DI 29 at 13-14.

*Hohnbaum*, the Hohnbaums' has 15,[63] ReconTrust's has 30,[64] Sara Snyder's has 28,[65] Pacific Residential's has 31,[66] ReconTrust's answer to Snyder's cross-claims has 10,[67] and its answer to Pacific Residential's cross-claims has 10.[68] In *Peyton*, ReconTrust's amended answer has 29,[69] and Eagle Home Mortgage, LLC's has 20.[70] And in *Promwongsa*, Bank of England's has four,[71] and the Promwongsas' has five.[72] The total number of affirmative defenses is 182.

Some answers include crossclaims or counterclaims—none of which mention bankruptcy. In *Hohnbaum*, Snyder[73] and Pacific Residential[74] each have two cross-claims against ReconTrust. And in *Promwongsa*, Bank of England has one counterclaim,[75] and the Promwongsas have two.[76] The total number of nonbankruptcy cross-claims or counterclaims is seven, bringing the grant total number of nonbankruptcy affirmative defenses, cross-claims, and counterclaims is 189.

### (b) Bankruptcy-law issues

The complaints allege that the debtors filed bankruptcy petitions and did not schedule their claims against defendants; the trustees are the estate representatives entitled under bankruptcy law to pursue the debtors' state-law claims in debtors' stead; and the trustees

---

[63] *Hohnbaum* DI 20 (Hohnbaums' answer) at 6-8 (all except sixth).
[64] *Hohnbaum* DI 21 (ReconTrust's answer) at 7-12 (all except 15th, 28th, 32nd, and 33rd).
[65] *Hohnbaum* DI 40 (Snyder's answer) at 6-13 (all except 18th, 28th, 31st, and 32nd).
[66] *Hohnbaum* DI 41 (Pacific Residential's answer) at 8-16 (all except 15th, 28th, 32nd, and 33rd).
[67] *Hohnbaum* DI 45 (ReconTrust's answer to Snyder's cross-claims) at 3-5 (all).
[68] *Hohnbaum* DI 46 (ReconTrust's answer to Pacific Residential's cross-claims) at 3-5 (all).
[69] *Peyton* DI 9 (ReconTrust's amended answer) at 7-12 (all except 15th, 28th, 32nd, and 33rd).
[70] *Peyton* DI 21 (Eagle Home Mortgage, LLC's answer) at 7-11 (all except 11th, 20th, 22nd, and 23rd).
[71] *Promwongsa* DI 13 (Bank of England's answer) at 6-8 (all except second and fourth).
[72] *Promwongsa* DI 14 (Promwongsas' answer) at 6-8 (all except second and fifth).
[73] *Hohnbaum* DI 40 (Snyder's answer) at 13-14.
[74] *Hohnbaum* DI 41 (Pacific Residential's answer) at 16-17.
[75] *Promwongsa* DI 13 (Bank of England's answer) at 8.
[76] *Promwongsa* DI 14 (Promwongsas' answer) at 8-9.

disclaim any bankruptcy avoidance or other trustee rights arising under sections 544

through 548.[77] The complaints do not otherwise rely on bankruptcy law or mention bankruptcy.

Defendants have raised or predicted bankruptcy-law issues in affirmative defenses,

motions to dismiss or for judgment on the pleadings, and oppositions to remand. None of the

cross-claims or counterclaims mentions bankruptcy.

> **(1)**      **Are the trustees' claims ones for avoidance under sections 544, 545, 547, 548, or 553, such that they are barred by the two-year limitation period of section 546?**

Affirmative defenses to these actions include the assertion that the trustees' claim are

time-barred under the two-year limitation period of section 546(a)(1)(A) because these actions

were brought more than two years after the foreclosure sales.[78] The same argument appears in

the supplemental memorandums by ReconTrust in support of its motions for judgment on the

pleadings and in defendants' joint opposition to remand.[79]

In response, the trustees point out that nothing in the text of the complaints expressly

invokes—and they affirmatively disclaim pursuit of—any avoidance power. Also, they argue

that they seek a determination that the foreclosure sales were void and thus did not result in any

---

[77] *Hohnbaum* DI 1-1, Ex. 1 (amended complaint) at 1-2, 6-7, ¶¶ 1-3, 5, 23, 28; *Peyton* DI 1, Ex. 1 (complaint) at 1-2, 8-9, ¶¶ 1-4, 29, 33; *Promwongsa* DI 1-1, Ex. A (complaint) at 1-2, 5-6, ¶¶ 1-3, 5, 22, 27.

[78] *Hohnbaum* DI 21 (ReconTrust's answer) at 12 (33rd defense), DI 40 (Snyder's answer) at 12 (32nd defense), DI 41 (Pacific Residential's answer) at 15 (33rd defense); *Peyton* DI 21 (Eagle's answer) at 11 (23rd defense); *Promwongsa* DI 13 (Bank of England's answer) at 6 (second defense), DI 14 (Promwongsas' answer) at 6 (second defense).

[79] *Hohnbaum* DI 60 (ReconTrust's memorandum in support of supplemental authority in support of motion for judgment on the pleadings) at 2-4; *Peyton* DI 41 (ReconTrust's memorandum in support of supplemental authority in support of motion for judgment on the pleadings) at 2-4, DI 75 (joint memorandum in opposition to trustees' motion to remand); *Promwongsa* DI 52 (joint memorandum in opposition to trustees' motion to remand).

transfer of the debtors' property interests, rather than order avoiding (setting aside) the sales as transfers of those interests.[80]

**(2)  Are defendants entitled to the good-faith-purchaser defense of section 550(b) or the time-bar of section 550(f)?**

Section 550(a) addresses the liability of the transferee of a transfer avoided under sections 544, 545, 547, 548, 549, 553(b), or 724(a). If a transfer is avoided under one of those sections, section 550(a) permits the trustee to recover the transferred property or its value from the transferee. Section 550(b) prevents the trustee from recovering a transfer from a transferee who takes for value, including satisfaction or securing of a present or antecedent debt, in good faith, and without knowledge of the voidability of the transfer avoided. Under section 550(f), a recovery action must be commenced no later than the earlier of one year after avoidance of the transfer or the time the case is closed or dismissed.

In defendants' joint opposition to remand in *Hohnbaum* and *Promwongsa*, they predict that, if these actions proceed beyond the pleadings, the issues that will need to be resolved include whether the one or more defendants is entitled to the good-faith-purchaser-for-value protections of section 550(b).[81] And in *Promwongsa*, two answers included the affirmative defenses that the trustee's claims are barred by the good-faith-purchaser defense under section 550(b)[82] and time-barred by section 550(f).[83]

---

[80] *Promwongsa* DI 28 (trustee's response to HSBC's motion to dismiss) at 2, 7-9.

[81] *Hohnbaum* DI 75 (defendants' joint opposition to trustee's motion for remand) at 5-6; *Promwongsa* DI 52 (defendants' joint opposition to trustee's motion for remand) at 5-6.

[82] *Promwongsa* DI 13 (Bank of England's answer) at 6 (second defense), DI 14 (Promwongsas' answer) at 6 (second defense).

[83] *Promwongsa* DI 13 (Bank of England's answer) at 6 (second defense), DI 14 (Promwongsas' answer) at 6 (second defense).

The avoidance actions governed by section 550 are those subject to the two-year time-bar of section 546(a)—those under sections 544, 545, 547, 548, and 553—and those under sections 549 and 724(a), which are not. Under section 549, the trustee may recover an unauthorized postpetition transfer of estate property, and under section 724(a), the trustee may avoid a lien securing a claim for a noncompensatory fine, penalty, forfeiture, or punitive damages. Neither section 549 nor section 724(a) applies to these actions.

As discussed in part IV.A.2(b)(1) above, the trustees deny that any of the claims in these actions is an avoidance action or otherwise arises under the Code or any other federal law. If the trustees are correct, then section 550—which applies only to transfers avoided under the Code— will not be a defense to the trustees' state-law claims. And if the trustees are wrong, then these actions will be dismissed as untimely under section 546(a). In either case, it seems unlikely that any material time will be spent on addressing section 550(b).

### (3) Were the claims abandoned to the debtors under section 554(c), depriving the trustees of standing?

Affirmative defenses raised by defendants include that, under section 554(c), the trustees' claims were abandoned to the debtors when the main cases were originally closed, depriving the estates and their trustees of standing to pursue the claims now.[84]

In *Peyton*, defendant Eagle Mortgage has answered with an affirmative defense entitled "Abandonment,"[85] but it asserts that the claims of the trustees in that action are barred "by the doctrine of abandonment because Plaintiffs did not pursue these claims prior to the bankruptcy discharge." That defense does not appear to be based on bankruptcy law. In Eagle's 23rd

---

[84] *Hohnbaum* DI 21 (ReconTrust's answer) at 12 (33rd defense), DI 40 (Snyder's answer) at 12 (32nd defense), DI 41 (Pacific Residential's answer) at 15 (33rd defense); *Peyton* DI 21 (Eagle's answer) at 11 (23rd defense).
[85] *Peyton* DI 21 (Eagle's answer) at 9, Eleventh Affirmative Defense.

affirmative defense, entitled "Bankruptcy Code," it asserts that the trustees' claim are barred by "the relevant provisions of the Bankruptcy Code, including but not limited to 11 U.S.C. § 546 ('Limitations on avoiding Powers') and 11 U.S.C. § 554 ('abandonment of property of the estate')." Eagle does not allege that the trustees' claims were scheduled by the debtors, which is a textual prerequisite to deemed abandonment. None of the other defendants in *Peyton* or either of the other actions has answered. None of the defendants' pending merits motions argues deemed abandonment. None of the debtors' schedules of assets included any causes of action. Therefore, although the sufficiency section 554(c) abandonment as an affirmative defense by Eagle or any other defendant is not now before me, it seems unlikely that defendants would prevail on it.

Section 554 addresses both affirmative and deemed abandonment of estate property, which effectively transfers title to estate property back to the debtor. Affirmative abandonment occurs when a trustee abandons property after notice to creditors. Under section 554(c), property is deemed abandoned if the debtor listed the property in the asset schedule, and the trustee does not administer the property before case closure.

A recent Ninth Circuit nonprecedential case on an appeal from an earlier district court decision in *ServiceLink* rejected an end-run around section 554(c). According to the circuit's November 30, 2018, memorandum decision,[86] the appellant appears to have argued that, even though the claims were not scheduled by the debtors, the claims should nonetheless be deemed abandoned because the claims should have been scheduled. The court of appeals rejected that argument, in part because no party asserted that the either the debtors or the original trustee knew of the claims before case closure. Neither Eagle's abandonment defense nor the abandonment

---

[86] Arnot v. ServiceLink Title Company of Oregon, 744 Fed. App'x 415 (9th Cir. 2018).

defense that defendants predict states any facts that would circumvent the effect of the claims not being scheduled.

Several answers include affirmative defenses that the trustee abandoned the claims "by not pursuing them" before the bankruptcy discharge,"[87] that the debtors' discharges deprive trustees of Article III standing to pursue the claims in these actions,[88] and the trustees' claims are barred by res judicata, judgment, and prior orders of the bankruptcy court.[89] Those defenses are not raised in the defendants' motions or other papers and were not addressed at oral argument as federal issues in addition to those that defendants expressly identify in their remand oppositions.

### (c) Predominance analysis

The present inquiry is only whether state-law or bankruptcy-law issues predominate. Here, state-law issues predominate in sheer number; 16 state-law issues are raised by the trustee's three claims for relief and defendants' 13 challenges to those claims, and defendants also have raised 189 nonbankruptcy affirmative defenses, cross-claims, and counterclaims (some may duplicate others and arguments made in defendants' motions). By contrast, there are essentially two bankruptcy-law issues—whether these actions are time-barred avoidance claims and whether they were previously abandoned. Beyond and perhaps more important than simple

---

[87] *Hohnbaum* DI 20 at 7 (sixth defense); *Hohnbaum* DI 21 (ReconTrust's answer) at 9 (15th defense); *Hohnbaum* DI 40 (Snyder's answer) at 10 (18th defense); *Hohnbaum* DI 41 (Pacific Residential's answer) at 11-12 (15th defense); *Peyton* DI 9 (ReconTrust's answer) at 9 (15th defense); *Peyton* DI 21 (Eagle's answer) at 9 (11th defense).

[88] *Hohnbaum* DI 21 (ReconTrust's answer) at 12 (32nd defense) DI 40 (Snyder's answer) at 12 (31st defense) DI 41 (Pacific Residential's answer) at 15 (32nd defense); *Peyton* DI 9 (ReconTrust's answer) at 12 (33rd defense) DI 21 (Eagle's answer) at 11 (22nd defense).

[89] *Hohnbaum* DI 21 (ReconTrust's answer) at 11 (28th defense), DI 40 (Snyder's answer) at 12 (28th defense), DI 41 (Pacific Residential's answer) at 14 (28th defense); *Peyton* DI 9 (ReconTrust's answer) at 11 (28th defense); *Peyton* DI 21 (Eagle's answer) at 10-11 (20th defense); *Promwongsa* DI 13 (Bank of England's answer) at 7 (fourth defense, claim and issue preclusion); *Promwongsa* DI 14 (Promwongsas' answer) at 7 (fifth defense, claim and issue preclusion).

issue counting, the core questions in these actions—whether the foreclosures were effective to convey good title to the initial and subsequent buyers from the foreclosure trustees—are ones solely of state law.

Thus, state-law issues heavily predominate over the bankruptcy-law issues, weighing in favor of remand.

### 3.     Difficult or unsettled nature of applicable law

The trustees argue on one hand that Oregon case law is neither difficult nor unsettled on their primary point—that a foreclosure sale by an improperly appointed trustee-deed trustee is void. But on the other hand, they expect defendants to "complicate and confuse the matter" by arguing that the trustees seek to "avoid" the trustees' deeds and subsequent instruments.[90] Defendants argue that "any state law issues are routine."[91]

The central issue in all of these actions is whether the bankruptcy estates are the true owners of the properties. Each of the trustees' claims depends on the assertion that the estates are the owners. And the trustees' arguments in support of that assertion are based on a series of cases from the Oregon Supreme Court and Court of Appeals. Despite the trustees' contention that these actions involve straightforward applications of those precedents, the Peytons' lawyer pointed out a number of factual distinctions between those precedents and these actions. Perhaps most importantly, the cases on which the trustees rely involve homeowners who were still in possession of their homes after foreclosure and who successfully challenged the foreclosure and reestablished their rightful ownership before losing possession, but in these actions, "[w]e now

---

[90] *Hohnbaum* DI 60 (plaintiff's motion for remand) at 3; *Promwongsa* DI 27 (plaintiff's motion for remand) at 3.
[91] *Hohnbaum* DI 75 (defendants' joint opposition to trustee's motion for remand) at 6; *Promwongsa* DI4 (defendants' joint opposition to trustee's motion for remand).

Case 19-03073-dwh    Doc 80    Filed 04/10/20

have ten years of possession by someone other than the original borrowers. We have ten years of loans, we have ten years of someone else claiming title to that property, with a deed recorded from the foreclosure sale."[92]

I don't say that those distinctions make a legal difference; again, I'm not deciding the merits. I mention them to explain why I don't accept the assertion that the state-law issues are straightforward. I or another federal judge could try to decide these issues by logical extrapolation of the holdings in the parties' cited cases. But as Oliver Wendell Holmes famously said, "The life of the law has not been logic: it has been experience."[93] It would be naïve to assume that the Oregon Supreme Court would automatically extend the holdings of those earlier cases without regard to the sensitive and difficult public-policy questions that they raise. To put it bluntly, the trustees' theory implies that an unknown number of Oregonians are squatting on the land of some previous homeowner whose house was foreclosed on years ago. I don't mean to say that the trustees' theory is wrong. I only say that the state-law issues in these cases are weighty and deserve to be considered by the courts whose primary responsibility it is to shepherd the development of Oregon law.

Admittedly, the federal question regarding section 546 has proved challenging as well. I rejected the section 546 defense in *Batlan v. Nunn (In re Miller)*.[94] But the *ServiceLink* district judge accepted it, and the *Neel* bankruptcy judge had discussed it favorably, without ruling on it. The *ServiceLink* district-court decision is now on appeal to the Ninth Circuit,[95] and that appeal

---

[92] *Hohnbaum* DI 71 (transcript of hearing in all three actions on November 7, 2019, transcript of 11/7/19 hearing) at 55:1-5.
[93] O. Holmes, *The Common Law* 1 (1881).
[94] No. 19-3009-dwh DI 39 (Bankr. D. Or. June 20, 2019) (audio file of oral ruling granting motion to remand).
[95] Ninth Circuit Court of Appeals No. 20-35122.

might result in a precedential decision that will guide the court that ultimately decides these actions. In any case, the Ninth Circuit's decision might give better guidance than the conflicting decisions that trial judges have produced so far. Even if I thought that the section 546 question were as challenging and as weighty as the state-law issues (which I don't), we would still be left with one federal issue against a much larger number of state-law issues.

This factor is thus the one that weighs most heavily in favor of remand.

### 4. Presence of related proceeding commenced in state court or other nonbankruptcy proceeding

In light of the sense of the factors as a whole, as well as the statutory requirement that remand be for an "equitable" ground, I interpret this factor to ask whether any pending state-court proceeding is sufficiently related to the removed action that remand for resolution of both actions in state court would advance judicial economy and consistency. I do not interpret it to require that the related proceeding be literally the same as the removed action or even involving only the same parties.

The trustees argue that the state-court actions where these actions originated are still pending in state court.[96] Defendants' brief denies the pendency in state court of actions concerning "the Trustee's claims."[97]

I disagree with the trustees. The state court's case dockets may show that these actions are still open there, but as a matter of law, removal deprived that court of jurisdiction. Although these actions themselves are not pending in state court, at the January 3 argument, the trustees' lawyer asserted without contradiction that four to six actions "basically identical" to these are

---

[96] *Hohnbaum* DI 61 (plaintiff's motion for remand) at 3; *Promwongsa* DI 27 (plaintiff's motion for remand) at 3.
[97] *Hohnbaum* DI 75 (defendants' joint opposition to trustee's motion for remand) at 6; *Promwongsa* DI4 (defendants' joint opposition to trustee's motion for remand).

pending in Multnomah County Circuit Court, and one is pending in Deschutes County Circuit Court. In light of the wording of defendants' brief and the trustees' lawyer's oral statement without contradiction, I take defendants' brief to deny the pendency in state court of an action with the same claims and against the same defendants as in these actions (I agree), and I take the trustees' lawyer's oral statement as conceded by defendants.

The four to six other state court actions are thus related proceedings within the meaning of this factor, so this factor weighs in favor of remand.

### 5.     Jurisdictional basis, if any, other than section 1334

I interpret this factor as a reminder that, if federal jurisdiction arises under both section 1334 and another statute, such as 28 U.S.C. §§ 1331 (federal question) or 1332 (diversity of citizenship), then the removal arguably was under the authority of section 1441, rather than section 1452. If that were the case, then remand on "any equitable ground" under section 1452(b), which is available only for actions removed under section 1452(a), would be unavailable—at least for any claims for which jurisdiction was based only on a section other than 1334. In that sense, this factor serves a gate-keeper function (permitting or prohibiting consideration of remand under section 1452(b)), rather than one weighing in favor of or against remand.

The trustees argue that there is no basis for federal jurisdiction over their claims other than section 1334, and in particular there is no federal-question or diversity-of-citizenship jurisdiction.[98]

Defendants do not cite sections 1331 or 1332 as a source of federal jurisdiction other than section 1334. But they do argue that their bankruptcy-law affirmative defenses (the time bar of

---

[98] *Hohnbaum* DI 61 (plaintiff's motion for remand) at 3; *Promwongsa* DI 27 (plaintiff's motion for remand) at 3.

section 546(a), abandonment under section 554(c), and good-faith purchaser-for-value status under section 550(b)) are "within the core jurisdiction of the bankruptcy court" under section 157(b)(2)(A) and (O), which is a basis for jurisdiction other than section 1334.[99]

I disagree with defendants and agree with the trustees. Section 1334 is the sole and complete source of jurisdiction over all bankruptcy cases and proceedings under, or arising in or related to cases under, the Code.[100] Section 157(b), labeled "Procedures," is a source not of jurisdiction, but rather of procedures allocating responsibility for bankruptcy decisions between bankruptcy and district judges. It authorizes a district court to refer bankruptcy cases and proceedings (which are before the district court under section 1334) to the bankruptcy judges of the district.[101] It also divides authority for making final bankruptcy decisions between the bankruptcy judge, who can finally decide a core proceeding (defined in section 157(b)(2)[102]), and a district judge, who (absent the parties' consent) must finally decide a noncore, related proceeding after receiving the bankruptcy judge's proposed findings of fact and conclusions of law.[103]

The removing defendants expressly concede in the removal notices that these actions are noncore, and they exercise their right under section 157(c)—applicable only to noncore proceedings—to withhold consent to entry of final judgment by the bankruptcy judge,[104] requiring that final judgment be by a district judge. They were correct to do so, for a proceeding

---

[99] *Hohnbaum* DI 75 (defendants' joint opposition to trustee's motion for remand) at 7-8; *Promwongsa* DI 52 (defendants' joint opposition to trustee's motion for remand) at 8.
[100] 28 U.S.C. § 1334(a), (b).
[101] Section 157(a).
[102] Section 157(b)(1).
[103] Section 157(c)(1); Stern v. Marshall, 564 U.S. 462, 480 (2011).
[104] *Hohnbaum* DI 1 (ReconTrust's notice of removal) at 4; Peyton DI 1 (ReconTrust's notice of removal) at 4; *Promwongsa* DI 1 (HSBC's notice of removal) at 4, ¶ 8.

Case 19-03073-dwh    Doc 80    Filed 04/10/20

is noncore if it "does not invoke a substantive right created by the federal bankruptcy law and is one that could exist outside of bankruptcy."[105] I doubt that the assertion of bankruptcy-law defenses converts a noncore action into a core proceeding; if it were to do so, defendants would lose their right to oppose entry of final judgment by the bankruptcy court. But I need not decide that question.

To apply this factor, I need only, and do, determine that section 157 is not a source of subject-matter jurisdiction over these actions in addition to section 1334. Even if the trustees' claims were core proceedings, federal jurisdiction over all proceedings under the Code or arising in or related to a bankruptcy case—i.e., over everything but the case itself—is nonexclusive.[106]

In its gate-keeper role, this factor leaves the gate open, i.e., it neither precludes nor mandates remand. It is neutral.

### 6. Degree of relatedness or remoteness of proceeding to main bankruptcy case

I interpret this factor to focus on the judicial efficiency that would occur if there were overlap between the issues in the removed action and those in the main case.

The trustees argue that these actions are only tangentially related to the main cases because these actions are noncore proceedings based exclusively on state law and can exist and should be adjudicated outside bankruptcy court.[107] Defendants argue that the claims in these actions are related to the main cases because the claims in these actions are "core to the

---

[105] *Matter of* Wood, 825 F.2d 90, 96-97 (5th Cir. 1987), quoted in *In re* Eastport Associates, 935 F.2d 1071, 1076 (9th Cir. 1991).

[106] 28 U.S.C. § 1334. *See also In re* McCarthy, 230 B.R. 414, 418 (9th Cir. B.A.P. 1999); *In re* Smith-Canfield, No. 09-6327-fra DI 70, 2011 WL 1883833, *3 n.10 (Bankr. D. Or. May 17, 2011).

[107] *Hohnbaum* DI 61 (plaintiff's motion for remand) at 3; *Promwongsa* DI 27 (plaintiff's motion for remand) at 4.

Case 19-03073-dwh    Doc 80    Filed 04/10/20

bankruptcy court's jurisdiction" because they are "unavoidably avoidance actions" and pursuit of these actions was the only reason to reopen the main cases.[108]

I agree with the trustees. These actions are related to their main bankruptcy cases only in sense that every adversary proceeding commenced by a trustee is related to a main case—i.e., any recovery from the actions must be accounted for and distributed in accordance with the Code and other laws and rules governing bankruptcy trustees. The relationship between a removed action and its main case that would weigh against remand would be one in which there were material identical legal or factual issues that must be resolved in both. Here, there are no legal or factual issues in common between these actions and the main cases. That each main case was reopened just to pursue the related action as the estate's only asset doesn't make these actions any more related to the main cases than if the main cases had never been closed or if there were two or more similar actions. This factor weighs in favor of remand.

### 7.    The substance rather than the form of an asserted core proceeding

The trustees argue that factors 7 and 8 apply only to core proceedings, and the claims in these actions are noncore proceedings.[109] In a footnote, defendants quote *Neel* for the proposition that factors 7 and 8 support retention because all the claims in that action "are within the core jurisdiction of this court."[110]

I agree with the trustees that factors 7 and 8 apply only to core proceedings.[111] These actions are not core proceedings. I explained in part IV.A.2 above my conclusion that the

---

[108] *Hohnbaum* DI 75 (defendants' joint opposition to trustee's motion for remand) at 7; *Promwongsa* DI4 (defendants' joint opposition to trustee's motion for remand).
[109] *Hohnbaum* DI 60 (plaintiff's motion for remand) at 4; *Promwongsa* DI 27 (plaintiff's motion for remand) at 4.
[110] *Hohnbaum* DI 75 (defendants' joint opposition to trustee's motion for remand) at 10; *Promwongsa* DI4 (defendants' joint opposition to trustee's motion for remand).
[111] *Cox*, 2015 WL 128001, at *2.

trustees' claims arise under state law. They are thus merely related to the bankruptcy case and are not core proceedings.[112] This factor is neutral.

### 8. The feasibility of severing state-law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court

The parties' positions on this factor appear above in part IV.A.7 above. Again, these actions are not core proceedings and do not contain core claims. This factor is neutral.

### 9. The burden on the bankruptcy court's docket

The trustees concede that bankruptcy courts are able to resolve the disputes in these actions, but the bankruptcy court ordinarily focuses on issues arising under bankruptcy law, not state law, and the state court is fully equipped to and able to adjudicate the claims.[113]

Defendants argue that my retention of these actions would pose minimal burdens on the bankruptcy court—because the issues are neither legally nor factually complex, briefing and argument on substantive motions occurred on November 7, 2019, some discovery has occurred, and few facts are in dispute.[114]

Retaining these actions would not overburden my calendar. This factor is neutral.

### 10. The likelihood that the commencement of the proceeding in bankruptcy court involves forum shopping by one of the parties

This factor was formulated with respect to abstention rather than remand, so its wording is inapposite here, but it still applies. The trustees argue that they are not forum shopping by

---

[112] *See* 28 U.S.C. § 157(b)(2) (defining core proceedings).
[113] *Hohnbaum* DI 61 (plaintiff's motion for remand) at 4; *Promwongsa* DI 27 (plaintiff's motion for remand) at 4.
[114] *Hohnbaum* DI 75 (defendants' joint opposition to trustee's motion for remand) at 8; *Promwongsa* DI4 (defendants' joint opposition to trustee's motion for remand).

asking that actions they brought in state court be returned there, and defendants' removal could be seen as forum shopping.[115]

Defendants argue that the filing of the remand motions more than three months after removal and after an adverse decision in a similar action in Oregon federal district court suggests forum shopping by the trustees.[116]

Although the portions of supporting cases cited by defendants were not necessary for their resolution, I agree that "any equitable ground" can include an unreasonable delay in moving for remand—at least if the delay results in bankruptcy-court litigation activity that would have to be redone or done differently in state court. At the January 3, 2020, argument, the trustees' lawyer denied that the district-court ruling had anything to do with the trustees' decision to move for remand, but I agree with defendants that the timing is suspicious.

Every well-advised litigant who has any say in the choice of forum will try to choose a forum that it believes to be favorable. It's naïve to imagine that any litigant chooses its forum out of a public-spirited desire to foster comity and judicial economy. I don't blame either side in these actions for trying to choose a favorable forum. The question for me is not whose motives are purer; it's whether remand is warranted for objective reasons. Neither side is engaged in the abusive kind of forum shopping that this factor contemplates.[117]

One reason to favor a state-court resolution of the challenging state-law questions in these actions is that a decision by the Oregon Supreme Court might reduce the scope for future

---

[115] *Hohnbaum* DI 61 (plaintiff's motion for remand) at 4; *Promwongsa* DI 27 (plaintiff's motion for remand) at 5.
[116] *Hohnbaum* DI 75 (defendants' joint opposition to motion for remand) at 3-4; *Promwongsa* DI 52 (defendants' joint opposition to motion for remand) at 3.
[117] *Peak Web*, 559 B.R. at 744.

forum shopping by clarifying the law and making it less likely that state and federal courts will reach divergent conclusions in other similar actions.

This factor is neutral.

### 11.    The existence of a right to a jury trial

I interpret this factor to consider whether asserted jury-trial rights would make resolution of the removed action more or less efficient if remanded.

The trustees argue that their jury demands in these noncore actions weigh in favor of remand.[118]

Defendants argue that (1) a jury demand, by itself, does not require remand (citing *Neel*'s holding that the similar facts there implicated "issues within the core jurisdiction of this court" that may be decided without a jury), (2) the trustees' right to jury trial under state law on a quiet-title claim, and (3) the balance of the claims will be resolved as a matter of law, and (4) the district court can hold any required jury trial.[119]

The question posed by this factor is not whether the nonremoving party's jury-trial right requires remand or whether the district court could hold any federal jury trial, but instead whether the involvement of two federal courts, rather than one state court, to resolve these actions by jury trial weighs in favor of remand. Because I haven't decided the dispositive motions and I don't know how a state court would decide them, I don't think it's appropriate to disregard the jury-demand issue on the assumption that the claims will be defeated before trial.

---

[118] *Hohnbaum* DI 61 (plaintiff's motion for remand) at 4-5; *Promwongsa* DI 27 (plaintiff's motion for remand) at 5.

[119] *Hohnbaum* DI 75 (defendants' joint opposition to trustee's motion for remand) at 9-10; *Promwongsa* DI4 (defendants' joint opposition to trustee's motion for remand).

In these actions, because defendants have not consented to entry of final judgment by the bankruptcy court, any federal jury trial would occur before a district judge. If these actions remain in bankruptcy court, all steps short of the jury trial would occur in the bankruptcy court, and some time would pass during the transfer to district court for trial—time that would not pass if these actions were remanded to state court.[120]

This factor weighs in favor of remand.[121]

### 12.    The presence in the proceeding of nondebtor parties

The trustees argue that the absence from these actions of parties other than the trustee and nondebtor defendants weighs in favor of remand.[122] Defendants argue that the nondebtor defendants oppose removal, so this factor weighs against remand.[123]

This factor appears to be geared toward actions in which nondebtor parties to a removed action have no connection to the bankruptcy case and prefer that the action remain in state court to avoid the cost and delay of removal. Here, none of the defendants has sought remand, and instead all of them have opposed remand. Also, the claims themselves are asserted by trustees as property of the bankruptcy estates.

This factor is neutral.

### 13.    Comity

The earliest of the three pre-*Cedar Funding* cases listing the same 14 factors is *Searcy v. Knostman*,[124] a 1993 decision of a Southern District of Mississippi district judge. *Searcy* cites

---

[120] *Machine Zone*, 2017 WL 517796, at *9.
[121] *Cox*, 2015 WL 128001, at *3.
[122] *Hohnbaum* DI 61 (plaintiff's motion for remand) at 5; *Promwongsa* DI 27 (plaintiff's motion for remand) at 5.
[123] *Hohnbaum* DI 75 (defendants' joint opposition to trustee's motion for remand) at 5; *Promwongsa* DI4 (defendants' joint opposition to trustee's motion for remand).
[124] 155 B.R. 699, 710 (S.D. Miss. 1993).

three other cases,[125] and "comity" appears in only one of them, *Western Helicopters, Inc. v. Hiller Aviation, Inc.*,[126] a 1993 case of an Eastern District of California district judge. Although the list in *Searcy* and later cases lists the single word "comity" as a factor, *Western Helicopters* includes in its list of remand factors the phrase "comity and respect for state court decision-making capabilities"[127]; it held that a state court "is better able to hear and determine a suit involving questions of state law than is a bankruptcy court."[128]

The *Western Helicopters* formulation of the comity factor is similar to language in section 1334(c)(1) permitting abstention from hearing certain proceedings "in the interest of comity with State courts or respect for State law." Section 1334(c)(2) requires abstention from a "proceeding based on a State law claim or a State law cause of action." Sections 1452(b) and 1334(c) "are kindred statutes," both favoring comity and the resolution of state-law questions by state courts.[129] Although section 1334(c) applies to abstention, rather than remand, it illuminates congressional understanding of the meaning of comity when determining whether litigation should proceed in state court or bankruptcy court. In light of both *Western Helicopters* and section 1334(c), I interpret "comity" in *Cedar Funding* to refer to federal courts' respect for both state law and state court's application of state law.

---

[125] *Tucson Estates*, 912 F.2d at 1167; Drexel Burnham Lambert Group, Inc. v. Vigilant Ins. Co., 130 B.R. 405, 407-08 (S.D.N.Y. 1991); Western Helicopters, Inc. v. Hillier Aviation, Inc., 97 B.R. 1, 2 (E.D. Cal. 1988).
[126] 97 B.R. 1, 2 (E.D. Cal. 1988).
[127] 97 B.R. at 2; *see also Peak Web*, 559 B.R. at 743.
[128] 97 B.R. at 2, 6.
[129] Twyman v. Wedlo, Inc., 204 B.R. 1006, 1019 (Bankr. N.D. Ala. 1996).

The trustees argue that, because all their claims are based on Oregon state law, rather than federal law, and state courts are familiar with and well equipped to handle this type of action, respect for state laws and state courts weighs in favor of remand.[130]

Defendants argue that, because the trustees' claims are avoidance claims under the Code, comity concerns are immaterial. They also argue that comity is less important if a state-court action has been removed soon after it was commenced and with little or no involvement by the state court, and these actions were removed without defendants filing any papers in state court or the state court having been involved.[131]

I agree with the trustees and disagree with defendants' contention that these actions are avoidance actions. As I discussed in part IV.A.3 above, these actions raise challenging and important issues of Oregon law. Defendants are correct that comity's respect for state courts weighs more heavily in favor of remand if a state court has spent time on an action before removal. But the reverse is not true; that a state court spent no preremoval time on an action does not vitiate the interest in comity if the action raises challenging and important issues of state law. An Oregon district judge has recognized that "[t]he Oregon state court is undoubtedly better suited to adjudicate disputes arising under its own law and remand is favorable especially where the matter does not implicate a 'core' bankruptcy proceeding."[132]

The interest in comity weighs in favor of removal.

---

[130] *Hohnbaum* DI 61 (plaintiff's motion for remand) at 5; *Promwongsa* DI 27 (plaintiff's motion for remand) at 5-6.
[131] *Hohnbaum* DI 75 (defendants' joint opposition to trustee's motion for remand) at 8; *Promwongsa* DI 52 (defendants' joint opposition to trustee's motion for remand) at 8-9.
[132] *Slinde & Nelson*, 2017 WL 721242, at *4.

### 14. The possibility of prejudice to other parties in the action

The trustees argue that no party would be prejudiced by remand, and all parties would benefit from adjudication by a state court with greater familiarity with deciding state-law issues, factors that weigh in favor remand.[133]

Defendants argue that this factor focuses not on whether remand would prejudice a party, but instead whether any party's position would be unfairly prejudiced by the bankruptcy court's retention of jurisdiction.[134] They cite *Neel*[135] and *Cox v. Holcomb Family Ltd. Partnership*.[136] I disagree.

Although both *Neel* and *Cox* considered the lack of prejudice from retention, neither case purported to limit the prejudice inquiry to the presence of prejudice from retention (i.e., denial of remand) and ignore the absence of prejudice from remand. Even if they had, it would be inconsistent with section 1452(b)'s authority to consider "any equitable ground" to consider prejudice from retention but not also from remand.

Although these actions have been pending for over nine months, they remain in their earliest stages. Defendants complain that the trustees didn't move for remand until three months after briefing and scheduling of argument on dispositive motions, and they argue that a non-*Cedar Funding* factor is the trustees' unreasonable delay in moving for remand;[137] they cite two bankruptcy cases.[138]

---

[133] *Hohnbaum* DI 61 (plaintiff's motion for remand) at 5; *Promwongsa* DI 27 (plaintiff's motion for remand) at 6.
[134] *Hohnbaum* DI 75 (defendants' joint opposition to trustee's motion for remand) at 9; *Promwongsa* DI4 (defendants' joint opposition to trustee's motion for remand).
[135] 554 B.R. at 250.
[136] No. 14-3260, 2015 WL 128001, at *2 (Bankr. D. Or. Jan. 8, 2015).
[137] *Hohnbaum* DI 75 (defendants' joint opposition to trustee's motion for remand) at 2-3; *Promwongsa* DI 52 (defendants' joint opposition to trustee's motion for remand) at 3-4.
[138] *In re* Topfer, 587 B.R. 622, 628 (Bankr. M.D. Pa. 2018); *In re* Hotel Mt. Lassen, Inc., 207 B.R. 935, 939 (Bankr. E.D. Cal. 1997).

Case 19-03073-dwh    Doc 80    Filed 04/10/20

The timing of the trustees' motions for remand is both puzzling and disappointing—as is the unexplained failure to file a remand motion in *Peyton*. Still, I don't think that either the removal or the remand has prejudiced or will prejudice any party significantly. The efforts that defendants have expended in briefing their motions will not go to waste; they can make the same motions based on the same arguments in the state court after remand.

Because remand will increase the parties' costs moderately, this factor weighs slightly against remand.

## B. Analysis of factors

Section 1452(b)'s grant of authority to remand on "any equitable ground" is "an unusually broad grant of authority" that "subsumes and reaches beyond all of the reasons for remand under nonbankruptcy removal statutes."[139] As such, "any one of the factors may provide a sufficient basis for equitable remand."[140]

Summarizing my analysis above of the 14 *Cedar Funding* factors—

- One favors retention: factor 14 (the possibility of prejudice to other parties in the action).

- Seven are neutral: factors 1 (the effect or lack thereof on the efficient administration of the estate if the court recommends remand), 5 (jurisdictional basis, if any, other than section 1334), 7 (the substance rather than the form of an asserted core proceeding), 8 (the feasibility of severing state-law claims from core

---

[139] McCarthy v. Prince (*In re* McCarthy), 230 B.R. 414, 417 (9th Cir. B.A.P. 1999).

[140] *Slinde & Nelson,* 2017 WL 721242, at *2. *See also Machine Zone*, 2017 WL 517796, at *3, 6, 11; Federal Home Loan Bank of Chicago v. Banc of America Securities LLC, 448 B.R. 517, 525 (C.D. Cal. 2011) (quoting *In re* Roman Catholic Bishop of San Diego, 374 B.R. 756, 761 (Bankr. S.D. Cal. 2007)); *Cox*, 2015 WL 128001, at *1 (quoting *In re* Sequoia Village, LLC, No. 11-06220-fra, 2012 WL 478926, at *1 (Bankr. D. Or. Feb. 12, 2012)).

bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court), 9 (the burden on the bankruptcy court's docket)l, 10 (the likelihood that the commencement of the proceeding in bankruptcy court involves forum shopping by one of the parties), and 12 (the presence in the proceeding of nondebtor parties).

- Six favor remand: factors 2 (extent to which state-law issues predominate over bankruptcy issues), 3 (difficult or unsettled nature of applicable law), 4 (presence of related proceeding commenced in state court or other nonbankruptcy proceeding), 6 (degree of relatedness or remoteness of proceeding to main bankruptcy case), 11 (the existence of a right to a jury trial), and 13 (comity).

More factors weigh in favor of remand (six) than in favor of retention (one). Among the pro-remand factors, the factors 2, 3 and 6 do so heavily. On balance, the factors supporting remand outweigh those supporting retention of these actions in bankruptcy court.

## V.    Conclusion

The *Cedar Funding* factors support equitable remand of these actions. The complex and import state-law issues in these actions predominate over other factors and strongly weigh in favor of remand.

I will prepare remand orders.

* * *

The complete captions for the three subject adversary proceedings are as follows:

| | |
|---|---|
| In re | Chapter 7 |
| **Molly E. Achugbue**, | Case No. 10-31819-dwh7 |
| Debtor. | |

| | |
|---|---|
| Amy Mitchell, chapter 7 trustee for the estate of Molly E. Achugbue, | Adversary Proceeding No. 19-03073-dwh |
| Plaintiff, | |
| v. | |
| Jason Hohnbaum; Patty Hohnbaum, Sara M. Snyder, fkn Sara M. Cooley; ReconTrust Company, N.A.; and Pacific Residential, | |
| Defendants | |
| In re | Chapter 7 |
| Robert Lee Manning, | Case No. 10-40926-dwh7 |
| Debtor. | |
| Candace E. Amborn, as chapter 7 bankruptcy trustee, and Michael B. Batlan, as chapter 7 bankruptcy trustee, | Adversary Proceeding No. 19-03076-dwh |
| Plaintiffs, | |
| v. | |
| Alvin H. Peyton; April M. Peyton; ReconTrust Company, nka ReconTrust Company., N.A.; and Eagle Home Mortgage, LLC, | |
| Defendants. | |
| In re | Chapter 7 |
| Eliana Rodrigues, | Case No. 10-33531-dwh7 |
| Debtor. | |
| Amy Mitchell, chapter 7 trustee for the estate of Eliana Rodrigues, | Adversary Proceeding No. 19-03091-dwh |
| Plaintiff, | |
| v. | |

| | |
|---|---|
| **Sayan Promwongsa, Pen Promwongsa, Dung Xuan Ngo, Dianna Ngoc Diep Ngo, HSBC Bank USA, N.A., as trustee for Wells Fargo Asset Securities Corporation, Pass-Through Certificate Series 2007-15, Bank of England,** and **Northwest Trustee Services, Inc.,** | |
| Defendants. | |

# # #